# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> JODY SMITH, ) <br> Defendant ) | **CRIMINAL ACTION** <br> **NO. 10-po-01793-TSH** |
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> JASON GILLIS ) <br> Defendant ) | **CRIMINAL ACTION** <br> **NO. 10-po-01792-TSH** |

## FINDINGS AND ORDER ON DEFENDANTS MOTIONS TO DISMISS

### October 11, 2011

**HILLMAN, M.J.**

### Introduction

The Defendants Jody Smith and Jason Gillis are each separately charged with operating a motor vehicle while under the influence of alcohol, in violation of 38 C.F.R.§ 1.218 (b)(15). Each was arrested by the Veterans Administration ("VA") police on Springs Road, in Bedford, Massachusetts on the campus of the VA Hospital. The Defendants have moved to dismiss these complaints claiming that the Government cannot prove that the alleged offenses occurred on VA property. For the reasons set for below I deny their motions.

## Facts

The Defendant Jody Smith was arrested on June 23, 2010 at the VA facility. The arresting officer observed Mr. Smith stopped on Springs Road beside Building 70 on the campus. After some preliminary conversation with Mr. Smith, during which he admitted that he had drank a "six pack" and after being administered a sobriety test, Mr. Smith was arrested for operating under the influence. The Defendant Jason Gillis was arrested on July 5, 2010 after being stopped while traveling on Springs Road. The Defendant was stopped beside Building 2 on the VA campus. After being administered several sobriety tests the Defendant was arrested for operating under the influence of alcohol. Where each Defendant was stopped on Springs Road is significant.

In 1926 the United States Government filed a petition with the Massachusetts General Court seeking condemnation of land in Bedford, Massachusetts in order to erect a VA Hospital. This condemnation request was passed by the Massachusetts Legislature in 1927. The Order of Condemnation expressly included a portion of Springs Road as part of the taking. Springs Road is a public way which runs along a north/south line through the VA campus. Those parts of Springs Road not on the VA campus are a public way in the town of Bedford, Massachusetts.

The portion of Springs Road that was transferred to the VA under the 1927 condemnation is described by metes and bounds and references "a plan of land in Bedford, Massachusetts, owned by Philip F. Coleman, dated July 15, 1926, by Charles J. Elliot, Engineer and Surveyor, recorded in the Middlesex County Registry of Deeds" ("Elliott Plan"). A title search conducted in the Middlesex South Registry of Deeds did not yield a copy of the Elliott

Plan and it is safe to assume it has been lost.[1] The VA did locate a survey of the property from 1947 that references the Elliott plan. That 1947 survey depicts Springs Road and shows its metes and bounds. The metes and bounds in the 1947 plan match exactly the metes and bounds of Springs Road conveyed to the VA in the 1927 Condemnation Decree. To further complicate matters, in 1941 and 1945 the VA expanded the hospital campus through additional acquisitions of land. These acquisitions did not include any portion of Springs Road even though Springs Road runs through two of the parcels. The 1941 and the 1945 transfers to the VA, expressly <u>excluded</u> any "part of the fee and soil of said Spring [sic] Road" (emphasis supplied).

The Defendant Smith was stopped on Springs Road besides Building 2 on the VA campus. This stop occurred on the portion of Springs Road which was transferred to the VA under the 1927 condemnation decree. The Defendant Gillis was stopped on Springs Road besides Building 70 on the campus. This part of Springs Road was within the 1941 and 1945 takings which specifically excluded Springs Road.

There was a great deal of evidence submitted by the Government that the length of Springs Road within the campus is maintained exclusively by the VA. That testimony included uncontroverted evidence that the VA plows Springs Road, paves and maintains the road, and has it's own system of street lighting which is different and distinct from the street lighting used by the town of Bedford. Finally the VA Police Department regularly patrols Springs Road.

---

[1] Witnesses from the VA searched their records but they could not find a copy of the Elliott Plan.

3

**Discussion**

The Defendants argue that this court has jurisdiction over these alleged offenses only if the Government can prove that they occurred on property "owned" by the VA. See 18 U.S.C. § 7 (3). They claim that the Government cannot prove that the alleged acts occurred on VA property. I am convinced beyond a reasonable doubt that the Defendant Smith's operation of his motor vehicle was on that portion of Springs Road that was transferred to the VA under the 1927 condemnation decree and is "owned" by the VA.

What is a closer question is whether Mr. Gillis' operation on that portion of Springs Road in the vicinity of Building 70 is under the "charge and control" of the VA as provided in 38 C.F.R. 1.218 (a). I am unable to find beyond a reasonable doubt that the VA owns that portion of Springs Road. The question thus remains whether or not the Government has proven beyond a reasonable doubt that Mr. Gillis' operation of his motor vehicle was on a porton of Springs Street that was "under the charge and control" of the Veterans Administration or whether the Government must prove that the VA owned that portion of Springs Road.

I am hard pressed to ignore the plain wording of 38 C.F.R. 1.218 (a) which provides that " . . . the following rules and regulations apply at all property under the *charge and control* of the VA". If the promulgators of the Code of Federal Regulations had wanted to make jurisdiction of the VA conditioned upon its "ownership" of the property they would have simply left the words "under the charge and control" out of the regulation. To ignore these words would assign them a status as surplusage which is contrary to legislative interpretation and the plain language of the regulation. The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and

4

ordinary meaning, courts need look no further and should apply the regulation as it is written. *Textron, Inc. v. Commissioner of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). "Under the charge and control" means to me an interest in the geographical area that is not dependent upon record title so much as what custom, history, public perception, and what the day to day running of the VA facility require. Black's Law Dictionary defines "charge" as "imposing a burden, duty, obligation or lien" and "control" as the "power or authority to manage, direct, restrict, regulate, govern, administer or oversee". It is undisputed that the Veterans Administration maintains and polices Springs Road on the VA campus. Similarly, the boundaries of the VA campus are sharply defined by signage and a separate lighting system. I find beyond a reasonable doubt that the portions of Springs Road on the campus of the VA Hospital are "under the charge and control" of the VA Hospital. Accordingly, I find beyond a reasonable doubt that Gillis operation of his motor vehicle was in an area under the charge and control of the VA.

For the reasons set forth above the Defendant's motions are denied.

/s/Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE